### DECKER *v.* LAWS.

### Opinion delivered February 18, 1905.

1. JUROR—COMPETENCY.—The fact that a juror is on friendly relations with either party does not render him incompetent. (Page 288.)

2. SAME—ERRONEOUS REJECTION.—Since a party is not entitled to have any particular juror, the erroneous rejection of a competent talesman is not prejudicial, in the absence of a showing that some biased or incompetent juror was thrust upon him. (Page 288.)

3. APPEAL—REASONS ASSIGNED BY COURT.—Reasons for giving a certain instruction, which were inserted by the court in the bill of exceptions, will not be considered on appeal unless they were expressed at the time of the trial and were supported by facts stated in the bill of exceptions. (Page 290.)

4. RECEIPT—EFFECT—BURDEN OF PROOF.—Where a receipt or check states on its face that the sum mentioned is in full payment of the account between the parties, the burden is on the party who signed such receipt or indorsed the check to show that it was not intended as full payment. (Page 291.)

5. SAME—EXECUTION—BURDEN OF PROOF.—Where there is a dispute as to whether a check or receipt had the words "in full of all demands" on it at the time it was executed, the burden is on the party relying upon such instrument to prove such fact. (Page 292.)

Appeal from Jackson Circuit Court.

FREDERICK D. FULKERSON, Judge.

Affirmed.

STATEMENT BY THE COURT.

F. P. Laws filed his complaint in the Jackson Circuit Court against the appellants, George W. Decker and George Goodrich,

under their style of the Newport Saw Mill Company, in which he alleged they were indebted to him in the sum of $936.98 by reason of having been engaged to sell their sawmill and plant, and further alleged that they had agreed to give him a commission of 10 per cent. on the amount of the sale, and that he effected a sale of said property at the sum of $9,369.80, and he exhibited a writing purporting to be a contract for commissions.

Goodrich and Decker filed separate answers, the substance of which is as follows: The employment was denied. It was alleged that Goodrich agreed to give Laws 10 per cent. commission on all he received from a sale of the property over and above what the property had cost, in the event that Laws furnished a man to buy it, and this agreement was confined to the interest Goodrich had in the property. That Decker would pay nothing by way of commission, and that the writing was only intended to cover such an agreement, to-wit: A commission of 10 per cent. on all the profits Goodrich made out of the sale. Goodrich further alleged that he had paid $50 to Laws in full settlement, and afterwards paid him $25 more when he found Laws was dissatisfied, and took his receipt in full of all demands. He also filed a counter-claim for the sum of $20, which he claimed Laws had borrowed from him. Laws filed a reply, denying same. Afterwards death of Laws was suggested, and cause revived in name of his executrix.

At the July term of court, 1902, the case was submitted for trial to a jury, whose verdict was in favor of plaintiff for $866.96. The motion for new trial is as follows:

(1.) Because the court erred in excusing and discharging the juror C. C. Crook because said juror answered, in response to question put to him on his *voir dire,* that he had an office in the bank of Newport, of which the defendant Decker was president, and that he had had business transactions with said Decker, when said juror had said he knew nothing about the facts in the case, and had formed no opinion in the case, was not related to any of the parties to the suit; which discharge of said juror caused the defendants to exhaust all of their challenges before the said jury was selected, to which action of the court exception was duly taken.

(2.) Because the court erred in giving the jury instruction number 2 over the objection of the defendants.

(2½.) - Because the court erred in giving the jury instruc-

tion number 3 over the objections of the defendants.

(3.) Because the attorney in his closing argument to the jury repeatedly called their attention to the fact that the defendants were men of wealth, while the estate of the plaintiff was insolvent, when no evidence had been introduced to that effect, and none was competent; and which argument was highly prejudicial to these defendants.

(4.) Because the attorney for the plaintiff was guilty of further improper conduct, in his closing argument to the jury, in saying and repeating that the defendants were men who would not pay their debts, and that they were hard to get money out of, regardless of their wealth, and other language to the same effect, which argument was not based on the evidence in the case, and was highly prejudicial to these defendants.

*John W. & Joseph M. Stayton,* for appellants.

If the court excluded the juror because he was appellants' friend, it was error. 32 Ark. 766. Instructions number 2 and 3 were misleading and conflicting. 2 Enc. 233; 27 Ark. 108; 6 Wash. 84; 48 Ohio, 296; 82 Tex. 259; 108 Mo. 352; 30 Ark. 305; 81 Ia. 321.

*Gustave Jones,* for appellee.

WOOD, J., (after stating the facts.)  1. The fact that a juror is on friendly relations to either party does not render him incompetent. *Lavender* v. *Hudgens,* 32 Ark. 763. But, since appellants were not entitled to have any particular juror, the erroneous rejection of the talesman was not prejudicial, in the absence of a showing that some biased or incompetent juror was thrust upon them. *Vaughan* v. *State,* 58 Ark. 353.

2. Two checks were introduced in evidence as follows:
"Newport Sawmill Co.

No. 1065.

"McRae Lumber & Merc. Co.

"Newport, Arkansas, April 14, 1899.

"Bank of Newport, Newport, Arkansas:

"Pay to the order of F. P. Laws Fifty Dollars
        $50.00                                $50.00
"In full of all demands.

"George Goodrich, Manager.
"Indorsed by F. P. Laws.        Stamped 'Paid 4-24-1899.'"

"No. 691.          ·          Newport, Ark., June 19, 1899.
     "Bank of Newport, Newport, Arkansas.
          "Pay to the order of F. P. Laws, Twenty and
          no-100 $20.00                              $20.00
"Loan.          ·

                                        "Newport Sawmill Co.
                         "By George L. Goodrich, Manager.
     [Indorsed] "F. P. Laws."
     The receipt is as follows:

                                   · "Judsonia, the......1899. `
"Received of Newport Sawmill Company.          .
     "Twenty-five dollars in full of all demands to date.
     "($25.00)                    [Signed]     F. P. Laws."

     In regard to these checks and receipt the testimony of Laws
tended to show that there was never any agreement between
him and appellees to accept any sum for his commission less than
the amount agreed upon. His testimony tended to show that the
words "in full of all demands" on the $50 check and the word
"loan" on the $20 check were not on the checks when he received
them. And his testimony as to the receipt also tended to show
that "he did not sign any receipt in full satisfaction" of his
demands. On behalf of appellants, Goodrich testified in regard
to the $50 check, that he mailed same to Laws, intending that it
should go on account, and that he wrote Laws next day telling
him if there was any more, when the matter was settled, he,
Goodrich, would give it to him. That the check had not been
changed, and that it had "in full of all demands" when sent to
Laws.

     As to the $20 check, Goodrich testified that it was for money
which Laws borrowed of him at Corning; that he gave Laws
the $20 check. As to the receipt, Goodrich testified that he wrote
the receipt exhibited in evidence, and that Laws signed it, and
read it at the time he signed it. In the bill of exceptions is
this statement: "The words 'in full of all demands' written in
check for $50, of date April 14, 1899, appeared to the court to
be written in a different hand, or in the same hand with a differ-
ent pen, or at a different time from the other writing in the
check. It was this fact that called forth the giving of instruction
number 3."

     The court gave instructions numbered 2 and 3, which are as
follows:

"2. You are instructed that where the parties give a receipt or check bearing upon its face that the sum mentioned is in full payment of the account between the parties, the burden is upon such party signing such receipt or check to show that it was not intended as a full payment.

"3. The burden of proof is upon defendants in this case to show that the checks had the words 'in full of all demands' written thereon at the time the plaintiff accepted such checks; and if you find that such words were not written thereon at such time, you will disregard such words."

Instruction number 2 was applicable to the evidence on behalf of appellants tending to show that the $25 receipt and the $50 check containing the words "in full of all demands" were unchanged, and that, after having been signed by appellee, they were *prima facie* receipts in full of all demands of appellee against appellants, and that the burden was upon appellee to show that the instruments did not mean what they purported on their face to mean. Appellee was contending that the receipt and check of $50 were not intended as receipts "in full payment of all demands," and the instruction simply tells the jury, in effect, that the burden was upon him to show this. The instruction was favorable to appellants.

Instruction number 3 was applicable to that phase of the evidence which tended to show that the instruments containing the words "in full payment of all demands" were altered after the instruments had been indorsed by appellee, and the instruction placed the burden upon appellants to show that the instruments contained the words "in full of all demands" at the time appellee accepted or signed same. In other words, this instruction placed the burden upon appellants to show that the check of $50 had the words "in full of all demands" when appellee indorsed and accepted it. The instruction uses the word "checks" when there was only one check containing the words "in full payment of all demands." So, the instruction must have referred to that check.

The court has inserted in the bill of exceptions its reasons for giving instruction numbered 3. But there is nothing in the record showing the facts upon which the court based its reasons. It is not proper to bring these matters into a bill of exceptions unless they were expressed at the time of the trial, and

were supported by some fact stated in the bill of exceptions. So we cannot consider the statement of the court as to the reason why it gave instruction numbered 3. Was the instruction correct?

Appellant Goodrich set up in his answer that "he had paid $50 to Laws in full settlement," and he claimed that the words "in full of all demands" on the $50 check were evidence of the fact that he had paid Laws what was due him. While this was not a technical plea of payment, it was the case of a party claiming the benefit of certain words in an instrument. These were relied upon to show that there had been a satisfaction of the demand, whatever it might have been. The instruction simply placed the burden upon the party producing the instrument, and claiming certain benefits thereunder, to prove the instrument. As appellants were claiming a special benefit from certain words in the $50 check, the burden was upon them to prove that Laws was bound by these words. The check was a special phase of the case introduced and relied upon by appellants, and it was correct to place the burden upon that particular question upon appellants. For Laws denied in his proof that the check contained any such words when he signed the check. There is nothing antagonistic or inconsistent in the two instructions. If Laws really signed the check with the words "in full payment of all demands" in it when he signed, then the burden was upon him to show that these words were not intended as full payment, as they purported to be, as the court told the jury in instruction numbered 2. But, on the other hand, if the check did not have the words "in full of all demands" when Laws signed same, then he was not bound by them, and the burden was upon appellants, in order to get the benefit of these words, to show that Laws signed the instrument containing them.

In the recent case of *Klein* v. *German National Bank*, 69 Ark. 140, this court said: "The burden of proof is on the plaintiff to make out his case; and to do this he must, of course, show that the defendants executed the note sued on; but when he shows that the signatures to the instrument are those of the defendants, he has the right to introduce the instrument in evidence; and if there be no further evidence, he has made out a case to go to the jury. The view best supported by reason, and the one to which the authorities seem tending, is that the mere fact of an interlineation or erasure appearing in an instrument does not *per se* raise any

presumption either for or against the validity of the writing, and the question when and with what intent an alteration was made is one of fact to be submitted to the jury upon the whole evidence."

The instructions under consideration were in accord with the doctrine thus announced. The burden in the whole case remained with the plaintiff. The burden was only shifted to the defendants on the special matter which they set up, as showing a satisfaction. Both theories were presented in the instructions. The words, "in full payment of all demands," being contested, the question as to when, by whom, and with what intent they were written was left to the jury upon the whole evidence, with the burden upon him who produced and claimed the benefit of the instrument to prove it, and the burden left with the plaintiff to establish his claim.

We see no error in the instructions.

3. No exceptions were saved to the remarks of counsel complained of here. We cannot therefore consider them.

Affirmed.